IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORILLARD TOBACCO COMPANY, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) No. 03 C 5540 |
| v. | ) ) Judge Robert W. Gettleman |
| AMOCO & FOOD SHOP 5, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorillard Tobacco Company ("Lorillard") filed a six-count complaint pursuant to the Lanham Act, 15 U.S.C. § 105 *et seq.* seeking damages and injunctive relief against defendant Amoco & Food Shop 5, Inc. ("FS5"), the operator of a gas station and food shop that sells cigarettes, including plaintiff's Newport brand. Plaintiff alleges that defendant sold and offered for sale counterfeit cigarettes in violation of plaintiff's registered trademarks. In Count I, plaintiff alleges that defendant infringed plaintiff's registered trademarks in violation of 15 U.S.C. § 1114(1). In Count II, plaintiff alleges the use of false designations of origin and false and misleading descriptions and representations in violation of 15 U.S.C. § 1125(a). In Count III, plaintiff alleges trademark dilution in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(c). In Counts IV through VI, plaintiff alleges state trademark dilution in violation of 765 ILCS 1036/65, unfair competition, deceptive trade practice in violation of Illinois law, and statutory unfair competition in violation of 815 ILCS 510/2 *et seq.*

Plaintiff has moved for summary judgment on Count I, arguing that there are no genuine issues of material fact as to the defendant's liability for selling and offering for sale counterfeit

Newport cigarettes. For the reasons discussed herein, plaintiff's motion for partial summary judgment is granted.

## FACTS[1]

Plaintiff Lorillard, a Delaware corporation with its principle place of business in North Carolina, is the fourth largest tobacco company in the United States. Plaintiff manufactures and sells Newport brand cigarettes, which were first introduced to the market in 1956. Since 1956, Lorillard has invested significant time, effort and money in advertising and promoting Newport cigarettes throughout the United States. Newport cigarettes have become the second leading brand of cigarettes in the United States. Defendant is an Illinois corporation that operates as a service station and mini-mart located at 4401 N. Harlem Avenue, Norridge, Illinois. Defendant is owned by George Nediyakalayil ("Nediyakalayil") and managed by Freddy Fuentes ("Fuentes").

Plaintiff and its affiliates own five valid and subsisting federal trademark registrations issued by the United States Patent and Trademark Office for its Newport cigarettes: Reg. No. 1,108,876; Reg. No. 1,178,413; Reg. No. 1,191,816; Reg. No. 1,920,066; and Reg. No. 2,600, 870. All of these marks have reached incontestable status pursuant to 15 U.S.C. § 1115(b). Plaintiff uses all five of the registered trademarks on each pack and carton of Newport brand cigarettes.

Since July 2003 plaintiff has identified more than fifty retail and wholesale establishments trafficking in counterfeit Newport cigarettes in the Chicago area alone, and has

---

[1] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute.

filed almost 40 separate cases for infringement. In most cases, plaintiff sought and obtained *ex parte* seizure orders to remove the counterfeit cigarettes and packaging from the marketplace.

D. Dianovsky ("Dianovsky") is a sales representative for Lorillard, serving stores in Chicago and the surrounding areas. On August 4, 2003, Dianovsky visited defendant and observed suspected counterfeit Newport cigarettes. Dianovsky obtained one carton of the suspected counterfeit Newport cigarettes, and sent the suspected carton to plaintiff's corporate headquarters for further inspection. Plaintiff's manager for sales planning, Ed O'Brien ("O'Brien"), determined that the carton obtained from defendant was counterfeit based on three variables. First, the tab for the tear tape, which on genuine Newport products is $5/16^{th}$ of an inch long, measured only $3/16^{th}$ of an inch on the counterfeit carton. Second, the printing method of the counterfeit carton was determined to be different than on authentic Newports because the side panel of the counterfeit carton lacked the blurry quality of the authentic packaging. Third, the use of the product code "103T5" on the bottom of the counterfeit cigarette packs and the use of the code "1003IT" on the end flap of the counterfeit cartons were incorrect. According to O'Brien, both were indications that the products were indeed counterfeit.

The samples of counterfeit cigarettes observed at FS5 and the carton obtained by Dianovsky were being offered for sale by defendant in the same area in which genuine Newport cigarettes were being offered for sale. The counterfeit cigarettes were being offered for sale for the same price as the genuine Newport cigarettes.

On August 11, 2003, plaintiff obtained an *ex parte* seizure Order. Pursuant to that Order, plaintiff seized ten packs of suspected counterfeit cigarettes and one empty suspected counterfeit carton of Newport Box 80's from defendant The cigarettes were in the "pull rack" that hangs

above the cash register, and were intermixed with authentic packs of Newport cigarettes. Again, based on the characteristics delineated above – shorter pull tabs, clarity of printing, and out-of-date product codes on both the individual cigarette packs and the cartons – plaintiff asserts that the ten packs and one empty carton seized were counterfeit. Plaintiff has moved for summary judgment arguing that there are no triable issues of genuine fact as to defendant's liability. Plaintiff's motion does not seek damages or any other remedy at this point.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *See Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Stewart v. McGinnis*, 5 F.3d 1031, 1033 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The

mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252.

Plaintiff contends that because of defendant's alleged failure to comply with Local Rule 56.1 ("L.R. 56.1"), its L.R. 56.1 statement of facts should be deemed admitted. Under L.R. 56.1, a party opposing summary judgment must prepare a concise response to the moving party's L.R. 56.1 statement, including a response to each of the movant's numbered paragraphs and, in the case of a disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). Defendant did not file a response to plaintiff's 56.1 statement. In defendant's response to plaintiff's summary judgment motion, however, defendant denies several of plaintiff's 56.1 facts. To the extent that defendant's denials are not supported by citations to evidence in the record, the court agrees with plaintiff that those denials do not create a dispute of material fact.

Plaintiff has moved for summary judgment on the issue of liability[2] on Count I, arguing that trademark infringement occurred and defendant is strictly liable for that infringement. Because sellers bear strict liability for violations of the Lanham Act, even dealers who unknowingly sell goods that bear an infringing mark are liable for trademark infringement.[3] 4 J.

---

[2]The court notes that defendant devotes a portion of his briefs to the issue of damages, which are not relevant to the instant motion.

[3]The Lanham Act provision on liability makes no mention of intention:
(1) Any person who shall, without the consent of the registrant –
    1.    use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection
(continued...)

THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25.10 (4th ed. 2002); *see also Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1153 n.6 (7th Cir. 1992). In order to establish its claim for trademark infringement, plaintiff must establish that, (1) its mark is protectable, and (2) that defendant's use of the mark is likely to cause consumer confusion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)(citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)). Further, once a trademark is registered, it is presumed to be valid absent proof of a legal defense or defect. *Packman*, 267 F.3d at 638; *see also* 15 U.S.C. § 1115(c).

There is a presumption that plaintiff's marks are protectable and valid because the five counterfeited trademarks are registered. *Packman*, 267 F.3d at 638; 15 U.S.C. § 1115(a). Defendant does not challenge the five trademarks. The first requirement necessary to establish a claim for trademark infringement is therefore fulfilled.

The question, then, is whether defendant's use of the mark was likely to cause consumer confusion. Typically, the existence of consumer confusion is a question of fact, but it can be answered on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (citing *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). Courts employ a seven factor test to determine the likelihood of confusion by use of a protected trademark: "(1) the similarity between the marks in appearance and suggestion;

---

[3](...continued)
        with which such use is likely to cause confusion, or to cause mistake, or to deceive; or ... shall be liable in a civil action by the registrant for the remedies hereinafter provided. 15 U.S.C.A. § 1114.

(2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff. *CAE Inc.*, 267 F.3d at 667-68 (collecting cases). While no single factor is dispositive, three of the factors have been deemed by courts to be particularly important: the similarity of the marks, evidence of actual confusion, and the defendant's intent. *Id.*

In the instant case, only the last factor – defendant's intent – weighs in defendant's favor. All of the other factors in the analysis weigh heavily in favor of Lorillard. The first factor is met because the packaging of the counterfeit cigarettes obtained from defendant is virtually indistinguishable from the packaging for genuine Newports. Plaintiff's own sales representative needed confirmation from employees at corporate headquarters to confirm that the packs and cartons obtained were counterfeit. The second and third factors are met because the counterfeit products are the exact same type of goods as Lorillard's genuine cigarettes, and were displayed on shelves intermingled with the authentic Lorillard products.

Regarding the fourth factor, consumers' degree of care is likely to be minimal in circumstances such as in the instant case, where the product at issue is widely available and inexpensive. *CAE Inc.*, 267 F.3d at 683. The purchase of an individual pack of cigarettes in a convenience store such as defendant's would rarely be accompanied by the degree of care necessary to identify the counterfeit product. The fifth factor, the strength of the plaintiff's mark, also favors plaintiff because plaintiff's Newport brand cigarettes are one of the most popular brand names in the United States, and it is undisputed that all five of the marks at issue are registered and protected, and four of the marks are incontestable. Lastly, the sixth factor is met,

because actual confusion is likely when the marks on the counterfeit packages and the authentic packages are virtually indistinguishable. Defendant offers no evidence that actual confusion was not likely.

There is no evidence, as mentioned above, that defendant knowingly or willfully sold goods bearing an infringing mark. No evidence exists in the record that suggests Nediyakalayil or Fuentes obtained the cigarettes at a reduced price, or had any idea that the actual cigarettes at issue were not authentic. These facts, however, concern the issues of damages and remedies, not liability. As noted above, a seller is strictly liable for trademark infringement. *Hard Rock Café*, 955 F.2d at 1153 n.6. Because defendant has failed to raise a triable issue of fact as to whether it committed trademark infringement in violation of the Lanham Act,[4] the court grants partial summary judgment in favor of plaintiff as to Count I.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment of liability is granted as to Count I for trademark infringement. This matter is set for a report on status

---

[4] In an attempt to raise a triable issue of fact, defendant argues that plaintiff has offered no evidence that the cigarettes themselves are counterfeit. Defendant claims that plaintiff ascertained only that the packages and cartons were counterfeit, and that defendant therefore cannot be found to have sold counterfeit cigarettes. As another court in this district recently held, the use of counterfeit marks on packages of cigarettes violates plaintiff's statutory rights even if the cigarettes contained in those packages are functionally identical to the plaintiff's product. *Lorillard Tobacco Co. v. Division and Noble Amoco Corp.*, 2005 WL 309535, at *5 (N.D. Ill. Jan. 20, 2005).

March 10, 2005, at 9:00 a.m. The parties are directed to meet and confer for the purpose of bringing this matter to an early and sensible resolution.

**ENTER:** **March 3, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**